HAWTHORNE, Justice.
In this case we are reviewing under our supervisory jurisdiction a judgment of the First City Court of the City of New Orleans which recalled and rescinded an order of devolutive appeal previously granted to defendant Louis Majesty and which dismissed his appeal on the ground that this devolu-tive appeal and the bond were not filed within the period provided by law.
CHF Finance Company, Inc., obtained a final judgment against relator Louis Majesty and another defendant for $221.39 plus interest, attorney’s fees, and costs. The finance company obtained this judgment after relator had filed an answer to the suit and after the case was tried on the merits with relator personally appearing and participating.[1]
According to the minutes of the court the judgment was rendered in open court on June 6, 1962, and the judgment itself shows that it was read and signed in open court on June 12, 1962. On June 25 relator applied for and was granted a devolutive appeal to the Fourth Circuit Court of Appeal, and on the same day he furnished the required appeal bond. Plaintiff in the suit thereafter caused the issuance of a rule requiring the relator to show cause why the order of the city court granting a de-volutive appeal should not be recalled and rescinded on the ground that his appeal was not applied for, and the bond was not filed, within the period provided by law. The First City Court for the City of New Orleans recalled and rescinded its order granting relator a devolutive appeal and accordingly dismissed his appeal.
On application by relator Majesty, the Court of Appeal, Fourth Circuit, granted alternative writs of mandamus to review the judgment of the First City Court dismissing the appeal. The matter was heard by the Court of Appeal, and for the reasons assigned in its opinion that court .recalled and vacated the alternative writs of mandamus previously issued by it and dismissed the proceedings there. See 146 So. 2d 196. This judgment of the Court of Appeal had the effect of affirming the judgment of the First City Court denying re *366 lator’s appeal. Relator then applied to this court under our supervisory jurisdiction for our review of that judgment of the city court.
As this case is one involving more than $100.00, the law fixing the time for taking an appeal from the judgment of the city court is set out in Articles 5001 and 5002 of the Code of Civil Procedure. These articles read:
“Art. 5001. * * *
“Except as otherwise provided in Article 5002, the procedure in a civil case in a city court of which a justice of the peace does not have concurrent jurisdiction is the same as that provided by law for a civil case in the district court of the parish in which the municipality is situated.”
“Art. 5002. * * *
“A new trial may be applied for within three days, exclusive of legal holidays, of the date of judgment, or within three days of the service of notice of judgment when necessary.
“A devolutive or suspensive appeal to the proper appellate court may be granted if applied for within ten days after the expiration of the delay for applying for a new trial, or within ten days of the denial of a new trial, * * * ” (Italics ours.)
Under the provisions. of Article 5002 relevant to this case,[2] relator’s appeal could be granted within 10 days after the expiration of the delay for applying for a new trial, and relator could apply for a new trial within three days, exclusive of legal holidays, “of the date of judgment”. The question for determination is the meaning of the term “date of judgment”. Respondent takes the position, and the Court of Appeal in its decision agreed with it, that the “date of judgment” is the date of rendition of judgment, in this case June 6. Relator contends that the “date of judgment” is the date the judgment was signed by the judge in open court, that is, June 12. If respondent is correct, relator’s appeal was too late; if relator is correct, his appeal was timely.
Article 5001 provides generally that the procedwe in civil cases in the city courts of which a justice of the peace does not have concurrent jurisdiction is the same as that provided by law for civil cases in the district court of the parish in which the municipality is situated. The official revision comments to Articles 5001 and 5002 state: “ * * * Art. 5001 ties in the general procedure used in district courts * * * but certain exceptions are essential, and these are covered by Art. 5002. The principal chamges are the reduction of the delay for answering and the requirement of filing exceptions with the answer(Italics ours.)
Mr. Henry G. McMahon’s summary of procedural changes in Book VIII, Title III, which contains Articles 5001 and 5002, shows that the changes regarding delay periods were in the length of delay; nothing is said of any real change in applying for a new trial, and nothing to indicate that there was an intention to change the focal point for the commencement of delays.
These comments, when considered with the general provisions relating to rendition of judgments and the law relating to the delay for applying for a new trial in the district court, convince us that the time for commencement of delay for applying for a new trial in the city court under Article 5002 was intended to be the same as in the district court. A consideration of the articles of the Code of Civil Procedure dealing with the procedure in civil cases in the district court is therefore in order.
According to Article 1911 found in the general provisions dealing with rendition of judgments, all final judgments shall *367 be read and signed by the judge in open court. The official revision comments to this article reflect that it was intended that “ * * * judgments are to be signed at the time of rendition or at any time thereafter”. (Italics ours.) The comments further explain that this provision was inserted to eliminate the different .rules existing in Orleans as opposed to the other parishes regarding the time when judgments could and should be signed. A study of the general articles on rendition of judgments and their modification in the trial court, Chapters 3 and 4, Title VI, Book II, reveals that the redactors intended to eliminate the confusion in Louisiana regarding rendition and signing of judgments and the time they become legally effective, to commence the delay for applying for a new trial from the signing of judgment, and to make the time for applying for a new trial uniform throughout the state. For instance, the preliminary statement by the redactors to the chapter on rendition of judgments commences: “One of the problems dealt with in this Chapter is the elimination of the confusion in Louisiana law regarding the rendition and signing of judgments and the time they become legally effective. * * * ” 4 LSA-C.C.P., p. 370.
Articles 1913 and 1974 of the Code of Civil Procedure as amended in 1961 by Act 23 eliminate the necessity of notice of all final judgments except as provided therein and make the time for applying for a new trial commence to run from the day the judgment was signed, except in cases where notice is required and then the time commences to run on the day after notice of signing is made or served.[3]
A comment in 21 La.L.Rev. 168, 229, styled “Symposium on Civil Procedure— Rendition of Judgments”, points out:
“In determining the ‘effective date’ of the judgment for the purpose of ascertaining the delays fo.r appealing, the Code of Civil Procedure corrected the deficiency in the old law, not by removing the distinction between the rendition and signing of the judgment or stipulation [stipulating] an ‘effective date’, but by stating that the delays for devolutive and suspensive appeals will commence on the expiration of the delay granted for the application for new trial. Such application may be made [except where notice is required] within three days, exclusive of holidays, * * * of the signing of the judgment. Thus, as between rendition and signing, the signing of the judgment is the focal point for the determination of periods of delay. * * * ” See also article by Judge John T. Hood, Jr., of the Louisiana Court of Appeal, Third Circuit, entitled “Judgments: Book II, Title VI”, 35 Tulane L.Rev. 578, 580 et seq.
From our study of the above Code articles and the comments found under them, we are convinced that, as concerns the computation of delays, the redactors of the Code intended to remove the uncertainty arising from the distinction between rendition and signing, to make it clear that the commencement of the delay for applying fo.r a new trial depends upon the signing of the judgment, and to make the time for applying for a new trial uniform throughout the state. Consequently the phrase “date of judgment” in the second paragraph of Article 5002 means the date on which the judgment is signed in open court by the judge. If it had been the intention of the redactors in Article 5002 to make the focal point for the commencement of the delay in which to apply for a new trial different from that in the district courts, certainly some mention of this would have been included in the comments under Articles 5001 and 5002 which we have referred to above. The appeal taken by relator was therefore timely
Respondent, in support of its contention that a new trial may be applied for within three days of the date of rendition of the *368 judgment, calls our attention to the use of the word “rendition” in the provision in Paragraph 1 of Article 5002 which reads: “Notice of the rendition of judgment is not necessary.” (Italics ours.) The redactors here were not speaking of “rendition” as contradistinguished from “signing”; they were speaking of rendition in the general sense as used in the title of Chapter 3 of the book on judgments. The general sense in which it was intended may be demonstrated by the official revision comments to Article 1913. The article itself said that notice of the signing of final judgment should be mailed by the clerk, and the official revision comments said that this article required the mailing of notice of the rendition of the judgment by the clerk in all cases except, etc.
Furthermore, to approve respondent’s argument could result in rejecting the jurisprudence of this state before the Code that no appeal can be taken until a judgment is signed.[4] The commencement for the delay for the appeal is dependent upon the delay for a new trial; therefore, if the delay for a new trial started running at the time of rendition rather than of signing and if a judge delayed long enough after rendition to sign the judgment, the delay for appeal could expire before signing. This court would be reluctant to conclude that such a departure from the prior jurisprudence was intended unless some comment was made to that effect, for when drastic changes are made, the drafters intend to point them out.
For the reasons set forth here, the city court’s judgment dismissing relator’s appeal, which in effect was affirmed by the Court of Appeal’s decree holding that his appeal was not timely, is erroneous.
For the .reasons assigned the judgment of the First City Court for the City of New Orleans recalling and rescinding its order granting relator a devolutive appeal is annulled and set aside, and that court is ordered to fix the return day to the Fourth Circuit Court of Appeal within 60 days after the date on which this judgment becomes final. All costs of this proceeding are to be borne by respondent; taxation of all other costs is to await final disposition of the case.

. Notice of judgment was not required in this case. Article 4898, Code of Civil Procedure, reads: “Notice of judgment shall be served on a defendant against whom judgment is rendered if the citation was not served on him personally, and he failed to answer. Notice of judgment need not be given in any other ease.”

. Notice of judgment was not required in this case (see Footnote 1), and relator did not apply for a new trial.

. Signing was also the focal point for the commencement of the delay before the 1961 amendment of Article 1974.

. James v. St. Charles Hotel Co., 145 La. 1004, 83 So. 222, and cases there cited; River & Rails Terminals, Inc., v. Louisiana Ry. & Nav. Co., 157 La. 1085, 103 So. 331; Succession of Savoie, 195 La. 433, 196 So. 923; see Brock v. Police Jury, 198 La. 787, 4 So.2d 829.